## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HDI GLOBAL SE,<br>SWISS RE INTERNATIONAL SE, STARR EUROPE INSURANCE LIMITED,<br>VIENNA INSURANCE GROUP, and QBE EUROPE SA/NV, as Subrogees of Currenta GmbH & Co. OHG,<br><br>          Plaintiffs,<br><br>          v.<br><br>FMC CORPORATION,<br><br>          Defendant. | C.A. No. 24-878-RGA |

### OPENING BRIEF IN SUPPORT OF FMC CORPORATION'S
### MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Dated: September 27, 2024

| | |
|---|---|
| Daniel M. Silver (#4758)<br>MCCARTER & ENGLISH LLP<br>405 N. King St., 8th Floor<br>Wilmington, DE 19801<br>(302) 984-6300<br>dsilver@mccarter.com | Dane H. Butswinkas (*Pro Hac Vice*)<br>Richmond T. Moore (*Pro Hac Vice*)<br>Nicholas A. Maricic (*Pro Hac Vice*)<br>WILLIAMS & CONNOLLY LLP<br>680 Maine Avenue S.W.<br>Washington, DC 20024<br>Telephone: (202) 434-5000<br>Fax: (202) 434-5029<br>dbutswinkas@wc.com<br>rmoore@wc.com<br>nmaricic@wc.com |

*Counsel for Defendant FMC Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................2

SUMMARY OF THE ARGUMENT ..................................................................................2

STATEMENT OF FACTS ..................................................................................................3

ARGUMENT .......................................................................................................................5

I.      This Action Should Be Dismissed Based on *Forum Non Conveniens*. ................5

        A.    Plaintiffs' Choice of Forum is Entitled to Little Deference.....................5

        B.    German Courts Are An Adequate Alternate Forum. ................................6

        C.    The Private Interests All Favor the German Forum..................................8

        D.    The Public Interests All Favor the German Forum.................................11

CONCLUSION..................................................................................................................14

# **TABLE OF AUTHORITIES**

## **CASES**

*Behrens v. Arconic, Inc.*, 487 F. Supp. 3d 283 (E.D. Pa. 2020) ..................................................... 13

*Behrens v. Arconic*, Inc., 2022 WL 2593520 (3d Cir. July 8, 2022) ..................................... 8, 9, 11

*Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004) ............................. 8

*Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188
   (D. Conn. 2013) ........................................................................................................................ 7

*Dahl v. United Techs. Corp.*, 632 F.2d 1027 (3d Cir. 1980) ....................................... 10, 11, 12, 13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) .............................................................................. 9

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869 (3d Cir. 2013) ............................. 5, 8, 11, 13

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947) ......................................................... 13

*Oto v. Airline Training Ctr. Arizona, Inc.*, 247 F. Supp. 3d 1098
   (D. Ariz. 2017) ..................................................................................................................... 8, 10

*PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663
   (D. Del. 2016) ........................................................................................................................... 7

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ................................................................ *passim*

*Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653 (6th Cir. 2021) ............................................ 8

*Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443 (D. Del. 1993) ...................... 9, 12, 13

*Travelers Indemnity Co. v. Lake*, 594 A.2d 38 (Del. 1991) .......................................................... 12

*Wellogix, Inc. v. SAP America, Inc.*, 58 F. Supp. 3d 766 (S.D. Tex. 2014) .................................... 8

*Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200 (3d Cir. 2017) .......................... 6, 12

*Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008) ....................................... *passim*

## **OTHER AUTHORITIES**

Restatement (Second) of Conflicts § 145 ..................................................................................... 12

**INTRODUCTION**

This case belongs in Germany. It arises out of an explosion at a waste-disposal facility in Leverkusen-Bürrig, Germany. Plaintiffs are five European insurance companies seeking reimbursement for their payments to Currenta GmbH & Co. OHG ("Currenta"), the German company that operated the facility. The only alleged connection with this forum is that Defendant FMC Corporation ("FMC") is incorporated in Delaware. Plaintiffs allege that a Philippines-based employee of an affiliate of FMC emailed two incomplete documents about MP-1 residue, a liquid created during the production of certain insecticides, to AVG, another German waste-disposal company, who then forwarded some of the information to Currenta. Months later, a shipment of MP-1 residue was transported to Germany from FMC's Danish affiliate in Ronland, Denmark, and the storage tank containing the residue overheated and exploded.

As a result, all the *forum non conveniens* factors point straight to Germany. It would be far more convenient to litigate this case in Germany. The overwhelming majority of witnesses (including third-party witnesses from Currenta and AVG), physical evidence, and documents are in Germany. Plaintiffs' choice of forum is not entitled to deference because Plaintiffs themselves are foreign entities with no ties to Delaware. German courts are more than adequate to adjudicate Plaintiffs' claim. In fact, Plaintiffs state they have already initiated related litigation against FMC's Danish affiliate in German courts. Germany has, by far, the most interest in this dispute, which is centered in Germany. The accident has been the subject of media coverage, governmental investigations, and ongoing civil and criminal litigation in Germany. German law will govern this dispute. This Court should not expend (and duplicate) resources resolving a complicated, catastrophic event that took place half a world away because the appropriate forum for this action is where the event took place: Germany. Thus, this Court should dismiss the Complaint based on *forum non conveniens*.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs HDI Global SE, Swiss Re International SE, Starr Europe Insurance Limited, Vienna Insurance Group, QBE Europe SA/NV (collectively "Plaintiffs"), filed the Complaint on July 26, 2024.  D.I. 1, Complaint ("Compl.").  The Complaint alleges a single negligence claim against FMC.  FMC now moves to dismiss the Complaint based on *forum non conveniens*.

## SUMMARY OF THE ARGUMENT

Dismissal for *forum non conveniens* is appropriate when another forum is available and adequate and is more convenient in light of the private and public interests involved.  Here, every factor in the analysis weighs in favor of Germany.

*First*, Plaintiffs' choice of forum is not entitled to deference because, as foreign entities, it is not more convenient for them to litigate this case in Delaware.

*Second*, German courts are an available and adequate alternative forum.  Nothing prevents Plaintiffs from filing their negligence action in German courts, which are well-regarded around the world.

*Third*, the private interests heavily favor Germany because it would be a more convenient forum for all involved.  All the key witnesses and physical evidence is in Germany, as are the key third-parties—Currenta and AVG.  Instead of flying witnesses around the world and litigating in two countries, it would be more cost effective for both Parties to try this case in Germany, where Plaintiffs have already initiated related litigation.

*Fourth*, with respect to the public interest factors, the law is clear that Delaware citizens and Delaware courts should not be saddled with applying foreign law to events that took place in a foreign country when the only tie to this jurisdiction is defendant FMC's incorporation in Delaware.

## STATEMENT OF FACTS[1]

1.      *The Parties.*  Plaintiffs are European insurance companies based out of Germany, Luxembourg, Malta, Austria, and Belgium, respectively.  Compl. ¶¶ 1-5.  They provided property insurance to Currenta, a waste-disposal company that operated a hazardous-waste incineration facility in Leverkusen-Bürrig, Germany.  Compl. ¶ 7.

Defendant FMC Corporation is an American agricultural science company incorporated in Delaware and headquartered in Philadelphia.  Compl. ¶ 8.  FMC has legally distinct affiliates around the world, including FMC Agricultural Solutions A/S ("FMCAS") in Denmark.  Compl. ¶ 21.

2.      *FMC's Communications with AVG.*  In October 2019, FMC Procurement Analyst Jon Gacutan contacted AVG, a European waste-disposal company, about a potential engagement to dispose of MP-1 residue.  Compl. ¶ 13.  Mr. Gacutan was employed by FMC Switzerland II GmbH Manila ROHQ, an affiliate of FMC, and was based in the Philippines.  Gush Decl. ¶¶ 3-5.  MP-1 residue is a liquid created during the production of certain insecticides.  Compl. ¶ 14.  AVG agreed to the engagement, and during the course of their discussions, Gacutan provided AVG with two documents containing information about MP-1's chemical properties: MP-1's Waste Streams Information ("WSI"), and the MP-1 Data Entry Form ("DEF").  Compl. ¶¶ 15, 19.  After these initial communications, FMCAS, FMC's Danish affiliate, took over discussions with AVG, and AVG began receiving and disposing of FMCAS's MP-1 residue.  Compl. ¶¶ 21-22.

3.      *AVG Communicates with Currenta.*  By summer 2020, AVG found itself unable to dispose of all of FMCAS's MP-1 residue and began searching for other options.  Compl. ¶ 22.  In

---

[1] The facts stated herein are as alleged in the Complaint, except as otherwise noted.  FMC does not concede the accuracy of the allegations and events described in the Complaint.

3

July 2020, AVG contacted Currenta to see if it had capacity to dispose of some of the MP-1 residue. Compl. ¶ 22. Currenta agreed to dispose of a portion of it. Compl. ¶ 24. During negotiations, AVG provided Currenta with the MP-1 DEF it had received from FMC, and FMCAS provided Currenta with a "Safety Data Sheet" it created containing information about MP-1. Compl. ¶¶ 23-24.

    4.    *The Explosion.* On the morning of July 26, 2021, FMCAS's MP-1 residue arrived from Denmark at Currenta's Leverkusen-Bürrig facility in Germany. Compl. ¶ 26. Currenta transferred the MP-1 residue to a storage tank. Compl. ¶ 27. The temperature began to rise, and the pressure in the tank began to climb. Compl. ¶ 29. In an effort to cool the tank and reduce internal pressure, Currenta employees tried several methods, including turning off the tank's circulation pump and activating a cooling coil, but it did not have the desired effect. Compl. ¶ 30. The tank exploded, causing a fire that resulted in seven deaths and extensive property damage. Compl. ¶¶ 32-33. As Currenta's insurers, Plaintiffs paid approximately $215,740,000 for the damage to the Leverkusen-Bürrig facility. Compl. ¶ 38.

    Soon after the incident, German authorities began criminal and regulatory investigations, which are ongoing. Compl. ¶ 34. An expert report commissioned by the parliament of the State of North Rhine-Westphalia concluded that, *inter alia*, Currenta caused the explosion by storing the MP-1 residue above its "self-explosion temperature," which caused the residue to self-heat in the storage tank. Compl. ¶¶ 34-35. The report also found that Currenta stored the MP-1 residue in a tank without safety features capable of reducing the pressure quickly enough to prevent the explosion. Compl. ¶ 35.

    5.    *Plaintiffs' Allegations.* In an effort to recoup the monies it paid under Currenta's insurance policy, Plaintiffs simultaneously filed two companion suits against (i) FMC in Delaware

and (ii) FMCAS and others in Germany.  Compl. ¶ 21 n.1.  In the Complaint, Plaintiffs allege that although FMC never communicated with Currenta, FMC is liable for hundreds of millions of dollars in damage to Currenta's facilities because it negligently provided "flawed and deficient" information about MP-1's composition and chemical properties to AVG.  Compl. ¶ 42.  According to Plaintiffs, FMC should have anticipated that AVG would pass along to Currenta some (but not all) the information FMC provided it, and Currenta would, among other things, store the residue above its "self-explosion temperature" in tanks without safety features capable of quickly reducing internal tank pressure.  Compl. ¶¶ 23-24, 35.

## ARGUMENT

**I.     This Action Should Be Dismissed Based on *Forum Non Conveniens*.**

The Court should apply the following four factors in its *forum non conveniens* analysis: "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum  . . .; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors affecting the convenience of the forum." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (internal quotation marks and footnotes omitted).  This case is a textbook example of *forum non conveniens*.

**A.     Plaintiffs' Choice of Forum is Entitled to Little Deference.**

The touchstone of the *forum non conveniens* inquiry is convenience, and a *domestic* plaintiff's choice of forum generally enjoys "a strong presumption of convenience."  *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).  Conversely, a *foreign* plaintiff's (or group of foreign plaintiffs') decision to sue in the United States "deserves less deference" because it is "much less reasonable" to assume their choice was made for the sake of convenience, as opposed to forum shopping.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

5

That is the case here. Plaintiffs are European insurance companies who "contemporaneously" filed suit in Germany against FMC's Danish affiliate and others. Compl. ¶ 21 n.1. "Since one can hardly perceive any convenience in having multiple massive litigations on both sides of the Atlantic," this Court should "accord[] Plaintiffs' forum selection a low degree of deference." *Windt*, 529 F.3d at 190; *see also Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017) (unpublished) (affirming district court's decision to accord low deference to foreign plaintiff's choice of forum where "the lawsuit's only connection to the District of Delaware is that it is the defendants' place of incorporation").

Although a foreign plaintiff can "overcome" the reduced deference it is owed with a "strong showing of convenience," *Windt*, 529 F.3d at 190, Plaintiffs cannot make this showing here. As explained in more detail below, not a single factor in the private or public interest analysis points to Delaware being the logical forum for this dispute.

  **B. German Courts Are An Adequate Alternate Forum.**

The requirement of an adequate alternate forum ordinarily is "satisfied when the defendant is amenable to process in the other jurisdiction," except in "rare circumstances" where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co.*, 454 U.S. at 254 & n.22. This factor is easily satisfied.

*First*, German courts have jurisdiction to hear Plaintiffs' claim. As described in more detail in the declaration of Professor Ben Steinbrück, a practicing German lawyer and an expert on the German legal system, German courts would have jurisdiction over FMC. Under the German Code of Civil Procedure, jurisdiction is vested in the courts in the place where a tortious act occurred. Steinbrück Decl. ¶ 39. In the Complaint, Plaintiffs allege FMC tortiously communicated incomplete information about MP-1 residue to AVG, a German company, and caused injury to

Currenta's facilities in Germany.  Compl. ¶¶ 13, 15, 18.  German courts would view these acts as sufficient to confer jurisdiction.  Steinbrück Decl. ¶¶ 38-39.

*Second*, Plaintiffs will not be deprived of remedies in Germany.  German statutory law provides a cause of action for negligence, and all arguments made in the Delaware Action also could be made under German law.[2]  Steinbrück Decl. ¶¶ 34-37.  Indeed, the elements are substantially similar: breach of a duty of care, fault (established through either intent or negligence), factual and legal causation, and injury.  Steinbrück Decl. ¶¶ 36.  If Plaintiffs were able to prove each of the elements of their negligence claim, Plaintiffs would be entitled to monetary compensation.  Steinbrück Decl. ¶¶ 44-45.  As in the American system, the purpose of monetary compensation in Germany is to put the plaintiff back in the position it would be in but for the defendant's tortious actions.  Steinbrück Decl. ¶ 44.

*Third*, there is no indication Plaintiffs would be treated unfairly by the German courts.  Plaintiffs simultaneously filed suit against FMCAS and others in Germany, Compl. ¶ 21 n.1, evincing their confidence in the German legal system [3]  And that confidence is well-founded: the German judiciary is regarded as independent, professional, and efficient by independent court watchers around the world.  Steinbrück Decl. ¶ 18.  Indeed, this Court has already found Germany to be an adequate forum.  *See PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 676 (D. Del. 2016) ("Therefore, I agree with [defendant] that Germany presents an adequate alternative forum for this litigation.").  As have "[n]umerous district courts [in other] Circuit[s]." *Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 197 (D. Conn. 2013) (finding Germany to be an adequate forum for a negligence claim and collecting cases), *aff'd*, 604 F. App'x

---

[2] The statute of limitations has not run on this matter in Germany.  Steinbrück Decl. ¶ 43.

[3] FMCAS has not yet been served in the related German action.  Gush Decl. ¶ 6.

7

16 (2d Cir. 2015); *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 659 (6th Cir. 2021) (Germany adequate); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (same); *Oto v. Airline Training Ctr. Arizona, Inc.*, 247 F. Supp. 3d 1098, 1108 (D. Ariz. 2017) (same); *Wellogix, Inc. v. SAP America, Inc.*, 58 F. Supp. 3d 766, 781 (S.D. Tex. 2014) (same).  There is no reason to believe German courts would not be up to the task here.

        C.       **The Private Interests All Favor the German Forum.**

In weighing the private interests, pertinent factors include: (i) the relative ease of access to sources of proof, (ii) the availability of compulsory process to obtain the testimony of unwilling witnesses, (iii) the cost of obtaining testimony from willing witnesses, (iv) the possibility of viewing the premises, and (v) "any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial."  *Kisano Trade*, 737 F.3d at 873.  Each of these factors weighs heavily in favor of dismissal.

It is indisputable that "[t]he bulk of the evidence relevant to the key issues in this case . . . is likely in Germany."  *Oto*, 247 F. Supp. 3d at 1109.  The most important physical evidence is the MP-1 residue, the remains of the exploded storage tank, and the damage to the Currenta facility.  That evidence is in Germany.  In fact, the Complaint does not describe *a single* physical object located in the United States that could conceivably be used as evidence at trial.  And, given the ongoing criminal and civil investigations, German authorities may not permit any physical evidence to leave the country until after those proceedings conclude.  *See Behrens v. Arconic*, Inc., 2022 WL 2593520, at *4 n.5 (3d Cir. July 8, 2022) (district court was correct to consider likelihood that UK authorities would not allow physical evidence to be transported to the United States for trial when events still under investigation in UK).  Accordingly, both the "relative ease of access to sources of proof" and the "possibility of view[ing] the premises" weigh heavily in favor of

8

dismissal based on *forum non conveniens*. *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The key witnesses are also in Germany. Plaintiffs must prove that FMC's alleged failure to provide complete information to AVG caused the explosion at Currenta. Since FMC did not communicate directly with Currenta, Compl. ¶ 41, proving causation necessarily will require testimony from employees of AVG and Currenta, who must describe the information they received about MP-1, their communications with each other, and their procedures and practices for dealing with liquid waste. Testimony may also be needed from the German authorities who investigated the incident.

The Court must consider FMC's defense witnesses, *Behrens*, 2022 WL 2593520, at *4, which also are centered in Germany. FMC's defenses will address the causes of the explosion, including the actions taken by Currenta and AVG after Gacutan provided the information to AVG. Because Currenta and AVG are German companies, most of the witnesses who will testify about their conduct are located in Germany. Indeed, it is not clear that *any* witness with first-hand knowledge of these issues is located in the United States. The location of the witnesses in Germany thus weighs in favor of dismissal. *See Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 447 (D. Del. 1993) (fact that "nearly all of the witnesses" were located in foreign forum pointed toward dismissal).

The "availability of compulsory process" to obtain the testimony of unwilling witnesses, *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (citation omitted), also weighs heavily in favor of a German forum. Neither Party in this litigation controls Currenta's and AVG's employees, who are crucial witnesses. Since they are "located in Germany[,] [they] are beyond this Court's jurisdiction and the Court would be unable to compel their presence should they choose not to come voluntarily."

9

*Oto*, 247 F. Supp. 3d at 1109.  It is particularly unlikely that third-party German witnesses would voluntarily come to the United States to testify in this matter, given that there are ongoing "[c]riminal and regulatory investigations" in Germany, Compl. ¶ 34, and their testimony potentially could be used against them in a prosecution.  By contrast, they are likely to be forced to testify in the case filed by Plaintiffs in Germany, where they are subject to compulsory process.  This factor thus weighs in favor of a German forum.  *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1031 (3d Cir. 1980) (dismissal proper when "evidence relating to negligence is largely if not entirely in [foreign forum] and [defendant] cannot compel the attendance of [foreign] witnesses or [foreign] real or documentary evidence in Delaware").

Even if witnesses were willing to testify voluntarily in the United States, "the costs to the German courts and to the parties are likely to be much less than if the action were maintained here."  *Oto*, 247 F. Supp. 3d at 1109.  German witnesses would need to be flown to the United States and provided accommodation, at a significant expense.  *See Windt*, 529 F.3d at 196 (affirming dismissal that considered, *inter alia*, the "substantial travel and accommodation expenses" that would be incurred flying witnesses from the Netherlands to the United States to testify).  It would also be wasteful, given "[m]any of the witnesses required in this case are already embroiled in investigations and litigation in [Germany] . . . . [and] transportation and lodging costs may be saved by litigating this dispute in [Germany], where the presence of many witnesses relevant to this case is already required."  *Id.* at 194.  Moreover, some of the German witnesses may not speak English, which would require translators.  *See id.* at 196 (cost of translators weighs in favor of dismissal).  And many internal Currenta and AVG documents are likely to be in German, which would also require translation.  *See id.*  Thus "the cost of obtaining [testimony] of willing witnesses," *Piper Aircraft Co.*, 454 U.S. at 241 n.6, is a factor that points to Germany.

10

Finally, if this case were litigated in Delaware, FMC may be forced to file a separate action in Germany against AVG and others for contribution or indemnity, significantly driving up costs for FMC. AVG is a European waste-disposal company, Compl. ¶ 13, and is not alleged to have taken any actions in the United States, or to have any presence in the United States. Accordingly, it is not clear whether this Court has jurisdiction over AVG. Should Plaintiffs prevail on their negligence claim, FMC would likely seek contribution from AVG and others, and accordingly, FMC would have to start from scratch and file a new action against AVG in Germany. On the other hand, if this case were litigated in Germany, FMC would have "several different mechanisms" to prosecute a claim against AVG, including by impleading it into the litigation with Plaintiffs, putting AVG on "third-party notice" of the potential contribution claim against it, or by bringing a stand-alone claim against AVG. Steinbrück Decl. ¶¶ 46-48. As the Supreme Court has recognized, "it would be far more convenient . . . to resolve all claims in one trial" than to force FMC to proceed piecemeal and "institute an action for indemnity or contribution" against AVG afterward in the foreign forum. *Piper Aircraft Co.*, 454 U.S. at 259. This factor too favors dismissal. *Windt*, 529 F.3d at 195; *Dahl*, 632 F.2d at 1031; *Behrens*, 2022 WL 2593520, at *3.

    **D.**    **The Public Interests All Favor the German Forum.**

The public interest factors further tip the balance in favor of Germany. The public's interests in a *forum non conveniens* motion include: (i) local interests in having the case tried at home; (ii) the desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; (iii) avoiding unfairly burdening citizens in an unrelated forum with jury duty; and (iv) the administrative difficulties arising from increasingly overburdened courts. *Kisano Trade*, 737 F.3d at 873. All of these factors weigh in favor of litigation in Germany—not Delaware.

11

*First*, Delaware's interests in this case are minimal. The only connection this case has to the State of Delaware is its status as FMC's place of incorporation. FMC is headquartered in Pennsylvania and no conduct is alleged to have occurred in Delaware. In this Circuit, "the commitment of Delaware judicial time and resources" is "not justified" when "[t]he only contact that Delaware has with this case is that it is [defendant's] state of incorporation." *Dahl*, 632 F.2d at 1032; *Wilmot*, 712 F. App'x at 205; *Rudisill*, 817 F. Supp. at 448.

*Second*, *forum non conveniens* dismissal is appropriate given this Court would be tasked with applying German law. A federal court sitting in Delaware and exercising diversity jurisdiction applies Delaware's choice-of-law rules. *Rudisill*, 817 F. Supp. at 448 n.7. Delaware courts determine which law to apply using the "most significant relationship" test. *Id*. *See also Travelers Indemnity Co. v. Lake*, 594 A.2d 38 (Del. 1991). That test considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Travelers Indemnity Co.*, 594 A.2d at 47 (quoting Restatement (Second) of Conflicts § 145). As a default, Delaware courts "apply the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties." *Rudisill*, 817 F. Supp. at 448 n.7. Here, the injury occurred in Germany, and Plaintiffs do not allege that any other state has a more significant relationship to the occurrence or the parties.

The difficulty in applying German law weighs in favor of dismissal. Germany "is not a common-law jurisdiction such as Great Britain, whose legal regime and tradition are similar to our own. Rather, [Germany] is a civil law jurisdiction" and it "would pose a substantial, if not insurmountable, burden to the prompt resolution of this case." *Id.* at 447-48; Steinbrück Decl.

¶¶ 13-14. "Quite simply, it would be more expedient for the [German] Courts to apply their own law than for this Court to hazard that task." *Rudisill*, 817 F. Supp. at 447-48; *see also Windt*, 529 F.3d at 193 (not unreasonable for district court to conclude that the burden of applying Dutch law weighs in favor of dismissal).

*Third*, the citizens of Delaware should not be burdened with sorting out liability under German law for an explosion that took place 4,000 miles away. As this Court has repeatedly found, incorporation in Delaware, standing alone, is not a sufficient nexus to impose jury duty upon the citizens of Delaware. *Dahl*, 632 F.2d at 1032; *Rudisill*, 817 F. Supp. at 448.

Nor is it a sufficient nexus to justify the imposition on this Court's already busy docket. If this case were to remain in Delaware, it would likely remain pending on the Court's docket for an extended period of time. Delays would come from any number of sources, including witnesses who are unwilling to testify until the ongoing civil and criminal proceedings in Germany conclude, difficulties obtaining access to evidence currently in the hands of German authorities, and the need to coordinate testimony with the related litigation Plaintiffs filed in Germany. These "practical problems" all weigh in favor of dismissal. *See Dahl*, 632 F.2d at 1031; *Behrens v. Arconic, Inc.*, 487 F. Supp. 3d 283, 331 (E.D. Pa. 2020) (partially reversed on other grounds) (delay caused by need to coordinate with ongoing foreign government investigation was one factor that pointed in favor of dismissal), *aff'd in part, rev'd in part*, 2022 WL 2593520 (3d Cir. July 8, 2022).

At bottom, "the central focus of the *forum non conveniens* inquiry is convenience[.]" *Piper Aircraft Co.*, 454 U.S. at 249. Every element of the inquiry shows that litigating this action in the United States would cause "administrative and legal problems" for the Court and "oppressiveness and vexation" to FMC that is "out of all proportion to plaintiff's convenience." *Kisano Trade*, 737 F.3d at 873, 877 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Germany is the most convenient forum for this action. The Court should dismiss the Complaint on the basis of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Dated: September 27, 2024

Respectfully submitted,

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
MCCARTER & ENGLISH LLP
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com

Dane H. Butswinkas (Pro Hac Vice)
Richmond T. Moore (Pro Hac Vice)
Nicholas A. Maricic (Pro Hac Vice)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
Telephone: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
rmoore@wc.com
nmaricic@wc.com

*Counsel for Defendant FMC Corporation*