**SZA** SCHILLING, ZUTT & ANSCHÜTZ

Frankfurt  Mannheim  München  Brüssel

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HDI Global SE, Swiss Re International SE, Starr Europe Insurance Limited, Vienna Insurance Group, QBE Europe SA/NV ("Plaintiffs")

v.

FMC Corporation ("Defendant")

Civil Action No. 24-cv-878-RGA

**Declaration by Professor Ben Steinbrück, MJur (Oxford)**

1  I have been instructed by Williams & Connolly LLP, counsel for the Defendant in the aforementioned civil action (the "**Delaware Action**"), to provide the following expert opinion ("**the Expert Opinion**") on the German legal system and whether the Plaintiffs may bring a similar claim to the aforementioned civil action in Germany. Counsel for the Defendant has also asked me to provide my opinion on more specific sub-questions listed at C. below.

2  The Declaration is structured as follows:

A. Expert's Qualifications ........................................................................................... 2
B. Case Summary ....................................................................................................... 2
C. Issues to be addressed ............................................................................................ 3
D. Brief Description of the German Legal System and the German Judiciary ........... 4
   I. The German Judiciary .................................................................................... 4
   II. Civil Litigation in Germany ........................................................................... 5
E. Legal Framework Applicable to Plaintiffs' Claim under German Law .................. 7
   I. German Law on Negligence ........................................................................... 7
   II. Claim Possible under German Law on Negligence ....................................... 8
   III. German Courts Have Jurisdiction for a Claim ............................................... 9
   IV. Claim Not Limitations-Barred ....................................................................... 9
   V. German Law Provides for Damages for Negligence .................................... 10
F. Defendant May Seek Contribution or Indemnity from Other Parties in Germany .. 10
G. Conclusion ............................................................................................................ 11
H. Affirmation ........................................................................................................... 11

SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mbH

Taunusanlage 1           Otto-Beck-Straße 11      Maximiliansplatz 18      Square de Meeûs 23
60329 Frankfurt a. M.    68165 Mannheim            80333 München            1000 Brüssel
T +49 69 9769601 0       T +49 621 4257 0          T +49 89 41114170        T +32 28 935 100
F +49 69 9769601 102     F +49 621 4257 280        F +49 89 41114117 280    F +32 28 935 102

www.sza.de               info@sza.de

Geschäftsführer: Dr. Christoph Allmendinger | Dr. Michaela Balke | Dr. Peter Bauschatz
Dr. Hans-Georg Berg | Dr. Stephan Brandes | Dr. Martin Feick | Dr. Jonas Fischbach
Jan Friedrichson | Christian Gehling | Dr. Martin Gross-Langenhoff | Hans-Joachim Hellmann
Marc-Philippe Hornung | Dr. Martin Kolbinger | Prof. Dr. Thomas Liebscher | Dr. Marc Löbbe
Dr. Cäcilie Lüneborg | Stefan Mendelin | Michael Molitoris | Dr. Thomas Nägele
Dr. Christoph Nolden | Thomas Oberle | Dr. Nicolas Ott | Markus Pfüller | Prof. Dr. Jochem Reichert
Dr. Philipp Rüppell | Prof. Dr. Stephan Scherer | Dr. Oliver Schröder | Prof. Dr. Ben Steinbrück
Katharina Steinbrück | Dr. Dietrich F. R. Stiller | Dr. Stefan Zeyher

Sitz: Mannheim | Amtsgericht Mannheim HRB 729487 | UST-Ident Nr.: DE 259 258 090 | Bankverbindung: Deutsche Bank AG | IBAN: DE33 6707 0010 0038 8157 00 | BIC/SWIFT: DEUTDESMXXX

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

## A.
## Expert's Qualifications

3   My name is Professor Ben Steinbrück. I am admitted to the Karlsruhe Bar Association as a German attorney-at-law (*Rechtsanwalt*) since 2010 and practice as a partner with law firm SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mit beschränkter Haftung ("**SZA**") in Mannheim, Germany. My practice focuses on dispute resolution, representing parties in complex, often cross-border, litigation proceedings before state courts and in domestic and international arbitration proceedings, and advising clients on issues of conflict of laws and civil procedure.

4   I teach international arbitration and international commercial law at Trier University, where I am an honorary professor. I have published widely on cross-border litigation, international arbitration, conflicts of laws and corporate law.

5   I was educated at the Universities of Cologne (First State Examination, 2003) and Oxford (Magister Juris, 2004) before joining the Max Planck Institute for Comparative and International Private Law in Hamburg, where I served as a Research Fellow until 2009. In 2008, I completed a doctoral degree at the University of Cologne with an award-winning dissertation on "The Support of Foreign Arbitration Proceedings by National Courts. A Comparative Study of German, Austrian, English, Swiss, French and U.S. Arbitration Law". I served as a legal clerk with the Hamburg Higher Regional Court, assigned *inter alia* to the Registry of the European Court of Human Rights.

6   Full details of my qualifications and publications are attached in the Appendix to this Expert Opinion.

7   For the sake of good order, I disclose that a subsidiary of Defendant, FMC Agricultural Solutions A/S, Denmark, has engaged SZA as local counsel if Plaintiffs file an action in Germany in relation to the 27 July 2021 explosion and fire ("**the Incident**") at the waste processing plant operated by Currenta GmbH & Co. OHG ("**Currenta**") in Leverkusen-Bürrig, Germany. My services in preparing this Declaration have been remunerated at an hourly rate of $ 445 (EUR 400), which is in line with standard market rates in Germany for the provision of legal expert opinions. All opinions expressed in this Expert Opinion are my own as provided for in the affirmation (G.).

## B.
## Case Summary

8   I base this Expert Opinion on the facts as alleged by Plaintiff in the Delaware Action, which I have reviewed but am not in a position to verify. I understand the facts presented by Plaintiff to be as follows:

9     On 26 July 2021, MP-1 residue, which is a liquid waste created in the process of producing pesticides, was delivered from the Defendant's Danish subsidiary FMC Agricultural Solutions A/S to Currenta for disposal. The tank where Currenta stored the MP-1 residue exploded on the morning of 27 July 2021. Criminal and regulatory investigations came to the conclusion that storing the MP-1 residue at an unsafely high temperature led to a self-heating chemical reaction. This self-heating caused increases in both temperature and pressure within the tank, ultimately resulting in the explosion. Plaintiffs claim that Defendant breached its common-law duty to exercise the care of a reasonable person to protect foreseeable persons or entities against unreasonable risk of harm by allegedly providing flawed and deficient information about MP-1 residue in the Safety Data Sheet and the Data Entry Form Direct Injection. Plaintiffs further claim that Currenta only handled and stored the MP-1 residue at a temperature that could trigger the MP-1 residue's decomposition process because Defendant allegedly provided flawed and deficient information.

10     At the time of the incident, the waste processing plant was insured against property damage by the Plaintiffs. According to the Delaware Action (paragraph 38), as of 26 July 2024 the Insurers had paid Currenta EUR 199 million under the insurance contract. Additionally, the Plaintiffs have announced their intention to file a lawsuit in Germany against the Defendant's subsidiary FMC Agricultural A/S, although this lawsuit has not yet been served.

## C.
## Issues to be addressed

11     I have been asked to provide a brief description of the German legal system including a discussion of judicial independence and structural safeguards (D. below).

12     I have also been asked to express my opinion as to whether the Plaintiffs in the Delaware Action may bring a similar claim in Germany (E. below). Specifically, I was asked to address the following questions:

- Whether German law provides a private cause of action for negligence, or whether there exists a close analytical equivalent.

- Whether the Plaintiffs would be able to bring a negligence (or equivalent) claim based on the alleged facts in Germany.

- Whether German courts would have jurisdiction over Defendant, either based on the factual allegations made in the Delaware Action, or because Defendant agreed to submit to the jurisdiction of the German courts to resolve this dispute.

- Whether a statute of limitations would prevent Plaintiffs from filing a negligence (or equivalent) claim in Germany.

- What remedies are available in German courts for negligence (or equivalent) claims.

- Whether Defendant may seek contribution or indemnity from other parties in Germany.

### D.
### Brief Description of the German Legal System and the German Judiciary

13   Germany's legal system is rooted in the civil law tradition, characterized by comprehensive codified statutes and principles guiding legal proceedings and judicial decisions.

14   Unlike common law systems, civil law systems like Germany's rely on written codes and statutes as the primary sources of law. Judges interpret these codes rather than creating law through judicial decisions. German law is highly codified, with major areas of law covered by specific codes, most prominent of which is the Civil Code (*Bürgerliches Gesetzbuch*). The German legal system places a strong emphasis on legal certainty and predictability. The detailed codifications aim to provide clear guidance on legal matters, reducing ambiguity and ensuring consistent application of the law.

### I.
### The German Judiciary

15   The German judiciary in civil matters is composed of three levels of independent and impartial professional judges without the involvement of juries. The first instance is a District or Regional Court, followed by the Higher Regional Court and finally the Federal Court of Justice. On appeal, the superior court may (partially) re-examine findings of fact and generally fully review whether the law was correctly applied.

16   Judicial independence is guaranteed as a matter of constitutional law under the German Basic Law (*Grundgesetz – GG*) and further secured by statutes such as the German Judiciary Act (*Deutsches Richtergesetz – DriG*), Courts Constitution Act (*Gerichtsverfassungsgesetz – GVG*) and Code of Civil Procedure (*Zivilprozessordnung – ZPO*). Art. 97 (1) Basic Law guarantees that judges are subject only to the law, ensuring independence from external pressure. Under the German Judiciary Act, judicial appointment and promotion are based exclusively on merit and free from political influence, safeguarding separation of powers. After a four-year probationary period, judges hold lifetime tenure. To ensure further freedom from interference, German constitutional law (Art. 101 Basic Law) requires that case allocation be determined before the judicial proceedings begin according to predetermined criteria.

17   German constitutional law also provides for a number of procedural rights. Anyone with a legitimate interest in asserting a claim has a right to access the courts. Art. 103 (1) Basic Law provides for a right to be heard for litigants and requires the courts to give the parties adequate opportunity to make submissions, as well as requiring the court to interact with

      these. Art. 3 (1) Basic Law imposes a general requirement of even-handedness on the State and is interpreted as granting a right to equality of arms in civil litigation.

18    The German judiciary scores very highly on a number of comparative rankings dealing with judicial independence. The World Justice Report's 2023 Rule of Law Index ranks Germany fifth out of 142 countries surveyed for rule of law and fourth worldwide in the category "civil justice". Moreover, the EU Justice Scoreboard, published annually by the European Commission, measures a very strong perception of judicial independence both among the general public and among companies, even when compared to other European Union countries. The European Commission for the Efficiency of Justice also notes that the German judiciary is particularly fast to resolve cases and does not suffer from any significant delays.

## II.
## Civil Litigation in Germany

19    Civil procedure in Germany is governed by the Code of Civil Procedure (*Zivilprozessordnung*), which provides a comprehensive framework for the conduct of civil litigation. The German civil procedure is characterized by its structured and systematic approach, emphasizing written pleadings, judicial control over the proceedings, and a focus on documentary evidence. This system aims to ensure fairness, efficiency, and legal certainty in the resolution of civil disputes.

20    Civil litigation in Germany begins with the filing of a complaint (*Klage*) by the plaintiff. The complaint must be submitted in writing to the competent court and must include a clear statement of the facts, the legal basis for the claim, and the specific relief sought. The court then serves the complaint on the defendant, who is required to respond within a specified period, typically two weeks. The defendant's response (*Klageerwiderung*) must also be in writing and should address the plaintiff's allegations, presenting any defences or counterclaims. This exchange of written arguments allows both parties to present their arguments, evidence, and legal positions in detail. The court may request additional submissions or clarifications if necessary. The goal is to ensure that all relevant issues are thoroughly examined before the oral hearing. This written phase helps to narrow down the points of contention and provides a clear framework for the subsequent oral hearings and potential taking of evidence.

21    In German civil procedure, judges play an active and central role in managing the proceedings. Unlike common law systems where judges often act as neutral arbiters, German judges are more involved in guiding the process. They have the authority to question parties and witnesses, request additional evidence, and suggest settlements. This proactive approach aims to facilitate a fair and efficient resolution of disputes. Judges are also responsible for ensuring that the proceedings adhere to procedural rules and that both parties have an equal opportunity to present their case.

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

22  Oral hearings are a fundamental component of German civil procedure. These hearings provide an opportunity for the parties to present their arguments and evidence in person before the court. The judge actively participates in questioning the parties and witnesses to clarify issues and assess the credibility of the evidence. Oral hearings are typically public, promoting transparency and accountability in the judicial process. The number and duration of hearings can vary depending on the complexity of the case, but they are generally concise and focused on resolving key issues. In cases that do not require the taking of evidence (e.g. in the form of witness testimony or expert opinions), there is usually a single oral hearing before the court renders its judgment.

23  The collection and presentation of evidence in German civil procedure are governed by strict rules, while the court is free in deciding how much weight to attach to each piece of evidence. Unlike many common law systems, German law applies the standard of certainty beyond reasonable doubt to civil proceedings as well, meaning that a court will not decide on the balance of evidence but instead will have to be sure that any facts on which it bases its decision are made out. The court controls the evidentiary process, determining which evidence is admissible and relevant to the case. Documentary evidence is highly valued, and parties are encouraged to submit written documents to support their claims. Witness testimony is also important, but it is subject to rigorous examination by the judge. Expert opinions may be sought in cases requiring specialized knowledge. The goal is to ensure that decisions are based on reliable and objective evidence.

24  German litigation does not have a separate phase for discovery of documents. Instead, it reaches a similar cards-on-the-table, factual truth approach based on a combination of rules on burden of proof and rights to have access to information which could also, in principle, be the subject of separate proceedings. The German approach tends to be that a party to litigation will not be compelled to produce documents if it refuses; however, the court may well make inferences against it, meaning that in such a case the party would be well-advised to provide the documents as it is otherwise likely to lose the proceedings. Moreover, in some situations German law also grants an enforceable right to obtain documents from the other side, for example where it is known that such documents must exist and withholding the documents serves no legitimate purpose other than frustrating the claim. Finally, German law also uses evidentiary presumptions based on typical sequences of events to shift the burden of proof, which creates incentives to disclose documents. Where, for example, a party undertook a high-risk activity and that risk then materialised, the court may infer that the party breached the necessary standard of care unless the party can provide that they took every reasonable precaution. This can put pressure on parties to disclose documents.

25  After considering the written pleadings, oral arguments, and evidence presented during the hearings, the court issues a judgment (*Urteil*). The judgment is delivered in writing and includes detailed reasoning explaining the court's decision. This written judgment

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

      provides transparency and allows for a clear understanding of how the court reached its conclusion. The judgment may grant or deny the relief sought by the plaintiff, and it may also address any counterclaims raised by the defendant.

26    Parties dissatisfied with a court's judgment have the right to appeal (*Berufung*) to a higher court. The appeal process allows for a review of both factual and legal aspects of the case. Appeals must be filed within a specified period, usually one month from the date of the judgment. The appellate court examines whether there were any errors in the application of law or procedural irregularities that could have affected the outcome. In some cases, further appeals (*Revision*) to higher courts, such as the Federal Court of Justice, may be possible on points of law.

27    Once a judgment becomes final and binding, it can be enforced through various legal mechanisms. The successful party may seek enforcement (*Zwangsvollstreckung*) if the losing party fails to comply with the judgment voluntarily. Enforcement measures can include garnishment of wages or bank accounts, seizure of assets, or even compulsory sale of property. The enforcement process is overseen by court-appointed bailiffs (*Gerichtsvollzieher*), who ensure that judgments are executed in accordance with legal procedures.

28    The allocation of costs and legal fees in German civil procedure follows specific rules. Generally, the losing party is responsible for paying both their own legal costs and those incurred by the winning party. This principle aims to discourage frivolous litigation and ensure that parties consider the financial implications before pursuing legal action. However, courts have discretion to apportion costs differently based on the circumstances of each case. Legal fees are regulated by statutory fee schedules, which provide transparency and predictability regarding legal expenses.

## E.
## Legal Framework Applicable to Plaintiffs' Claim under German Law

29    The following section addresses the questions posed at C. above and assesses whether Plaintiffs could bring in Germany a claim similar to the Delaware Action.

### I.
### German Law on Negligence

30    Under the conflict of laws rules applied by German courts, particularly Art. 4 of Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 on the law applicable to non-contractual obligations (Rome II), the law applicable to a non-contractual obligation arising from a tort or delict is the law of the country where the damage occurs, regardless of where the event causing the damage happened or where indirect consequences occur. Recital 17 of the Rome-II Regulation clarifies that in cases of personal injury or property damage, the applicable law is that of the country where the

      injury or damage occurred. Since Currenta's property was damaged in Germany, German courts would apply German law in the present case.

31    German law requires that any party who negligently causes damage to another is required to make good for such damage. Such claims can arise both in contract and in tort, and generally require that the defendant has breached a duty of care designed to protect the plaintiff's position and that this has led plaintiff to suffer a loss. German law thus imposes a general duty for anyone engaging in dangerous activities to take reasonable precautions to prevent foreseeable harm.

32    Typical legal bases for such a claim would be:

      s 280 (1) Civil Code: *"If the obligor breaches a duty arising from the obligation, then the obligee may demand compensation of the damage caused thereby. This does not apply if the obligor is not responsible for the breach of duty."*

      s 823 (1) Civil Code: *"A person who, intentionally or negligently, unlawfully injures the life, limb, health, freedom, property or some other right of another person is liable to provide compensation to the other party for the damage arising therefrom."*

      s 823 (2) Civil Code: *"The same duty is incumbent on a person who commits a breach of a statute that is intended to protect another person. If, according to the contents of the statute, it is possible to violate it also without fault, then liability to compensation only exists in the case of fault."*

33    There is therefore a statutory private cause of action for negligence.

## II.
## Claim Possible under German Law on Negligence

34    Based on the alleged facts, Plaintiffs would be able to bring a negligence claim in Germany. I am not in a position to determine whether such a claim would succeed on the merits, but can confirm that all arguments made in the Delaware Action could also be made under German law. A court would then have to determine whether it finds the cause of action made out.

35    The most obvious basis for Plaintiffs' action in German law would be s 823 (1) Civil Code. According to this provision, *"a person who, intentionally or negligently, unlawfully injures the life, limb, health, freedom, property or some other right of another person is liable to provide compensation to the other party for the damage arising therefrom."*

36    This action contains several elements. First, Plaintiffs would have to establish that their property has been injured. Second, the act or omission must be unlawful, which involves

      a breach of duty of care. German tort law imposes a general obligation on anyone engaging in a dangerous activity to take reasonable precautions to prevent damage to third parties. Third, Plaintiffs would have to establish a causal link between the breach of duty and the damage suffered. This involves both factual causation (the breach caused the damage) and legal causation (the damage was a foreseeable consequence of the breach). Finally, fault must be established, which can be through either intent or negligence.

37    Plaintiffs could therefore file claims substantially the same as those in the Delaware Action under German law.

### III.
### German Courts Have Jurisdiction for a Claim

38    On the basis of the facts alleged in the Delaware Action, German courts would consider that they have jurisdiction to hear Plaintiffs' negligence claim. Moreover, German courts would also have jurisdiction if Defendant agreed to submit to the jurisdiction of the German courts to resolve this dispute. Since German law does not have a doctrine of *forum non conveniens*, a German court would thus be required to hear the case if it has jurisdiction.

39    German courts' international jurisdiction is regulated by a combination of public international law, European Union law and domestic statutes. Under Art. 6 (1) of Regulation (EU) No 1215/2012 (the "Brussels Recast" Regulation), if the defendant is not domiciled in a Member State of the European Union, the jurisdiction of the courts of each Member State is determined by the law of that Member State. Since Defendant is seated in the United States, a German court would thus determine whether it has jurisdiction by applying German statutory rules. These rules (s 32 Code of Civil Procedure) provide that for tort claims the courts at the place where the tortious act was committed shall have jurisdiction. Since Plaintiffs claim breach of a duty of care by Defendant in supplying information about the MP-1 residue, they can thus plausibly allege that a tortious act damaging Currenta's property was committed in Germany, and the German courts would see themselves as having jurisdiction to hear an action by Plaintiffs against Defendant.

40    Furthermore, s 39 Code of Civil Procedure also provides that the German courts will have jurisdiction if the defendant does not object to their jurisdiction.

### IV.
### Claim Not Limitations-Barred

41    There is no indication that statutory time limits would prevent Plaintiffs from filing a negligence claim similar to the Delaware Action in Germany. The statute of limitations continues to run until the end of 2024 and can in any case be extended through an agreement by the Parties or waived by Defendant.

42   The general limitation period for civil claims is three years, starting from the end of the year in which the claim arose and the plaintiff became aware of the circumstances giving rise to the claim (ss 195, 199 (1) Civil Code). The assignment of claims does not trigger a new limitation period. However, as soon as a plaintiff brings an action, the limitation period is suspended (s 204 (1) No 1 Civil Code).

43   For Currenta's alleged claim for damages arising from the Incident, the limitation period would have started at the end of 2021, the year the explosion occurred, and would expire at the end of 2024.

## V.
## German Law Provides for Damages for Negligence

44   Under German law, the defendant to a successful damages claim is required to, as far as possible, put the claimant in the position they would have been in but for the defendant's acts. Under s 249 (1) Civil Code, *"a person who is liable in damages is to restore the position that would exist if the circumstance obliging them to pay damages had not occurred"*. s 249 (2) Civil Code allows the injured party to demand monetary compensation instead of restoration when there is injury to a person or property damage. This provision is also applicable in cases where property is destroyed.

45   Under s 252 Civil Code, damages also include lost profits, ie that profit that could reasonably be expected to be attained under normal circumstances or special conditions, particularly due to measures and precautions taken. This ensures that the injured party is not only compensated for direct damages but also for potential financial losses that are a likely consequence of the damaging event.

## F.
## Defendant May Seek Contribution or Indemnity from Other Parties in Germany

46   Moreover, German law also provides several different mechanisms to ensure that a defendant who can seek contribution or indemnity from a third party is protected. A typical possibility is simply bringing a claim against the third party, either within the same proceedings or separately. This requires the usual criteria for a claim to be made out, including establishing the jurisdiction of the German courts. On the facts alleged by Plaintiff, Defendant may have such claims against other persons involved in the waste transport and disposal chain, who are based in Germany and thus within the jurisdiction of the German courts.

47   In addition, German civil procedure also has the concept of third-party notice under ss 72 et seq Code of Civil Procedure. This mechanism reacts to the uncertainty typically associated with actions for contribution or indemnity, since frequently a defendant's first line of defence will be that they are not liable at all, with an action for contribution or indemnity brought only if this argument fails. The German third-party notice procedure allows

  the defendant, via the court, to notify potentially affected third parties that proceedings are ongoing which may later lead to contribution or indemnity claims against the third party. The third party can then either join the proceedings as an intervener on the defendant's or claimant's side or choose not to join the proceedings; however, whether or not they join, they cannot later argue that the proceedings were incorrectly decided, i.e. they are bound by both the operative part of the judgment and the main reasoning of the court. This mechanism protects the defendant by ensuring that the result of the initial proceedings becomes binding for any future action for contribution or indemnity against the third party, but without the full cost and risk of adding a third party to the proceedings by way of joinder.

48 Defendant would therefore be able to seek contribution or indemnity from other parties in Germany.

## G.
## Conclusion

49 Plaintiffs could therefore bring a claim substantially identical to the Delaware Action in Germany. Plaintiffs could assert a claim under the German law of negligence, German courts would have jurisdiction, and, if such a claim is successful, it would lead to full monetary compensation of Plaintiffs' damages.

## H.
## Affirmation

50 I confirm that I have made clear which facts and matters referred to in this Expert Opinion are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer. I declare under penalty of perjury under the laws of the United States of America that the foregoing truly and correctly reflects my opinions and conclusions regarding the questions put to me within the scope of this report.

51 Executed on September 26th, 2024 in Mannheim, Germany.

*[signature]*

Prof. Dr. Ben Steinbrück
- Rechtsanwalt -

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

PROF. DR. BEN STEINBRÜCK, MJUR (OXFORD)
Partner

SZA Schilling, Zutt & Anschütz
Rechtsanwaltsgesellschaft mbH
Otto-Beck-Straße 11
68165 Mannheim
Germany

T:  +49(0)621 42 57 216
M: +49(0)171 227 1673
E:  Ben.Steinbrueck@sza.de



Ben Steinbrück is a partner at Schilling, Zutt & Anschütz in Frankfurt am Main and Mannheim, Germany. He acts for parties in complex disputes in domestic and international arbitration proceedings and before state courts and sits as an arbitrator (chairman, sole arbitrator and co-arbitrator). He has particular experience in DIS, ICC, VIAC and ad hoc arbitration in commercial disputes and focuses on post-M&A, shareholder and other corporate disputes. He also advises clients on issues of conflicts of laws and civil procedure.

Ben Steinbrück is an honorary professor at the Trier University, Germany, where he teaches courses on international arbitration and international commercial law. He also publishes widely on international arbitration, cross-border litigation, conflicts of laws and corporate law.

From 2004 to 2009 Ben Steinbrück was a Research Fellow at the Max Planck Institute for Comparative and International Private Law in Hamburg. He obtained his doctorate from the University of Cologne in 2008 and his master's degree from the University of Oxford in 2004. Bens working languages are German, English and French.

Selected Memberships

Delegate to the ICC Commission on Arbitration and ADR
VIAC Ambassador for Germany (VIAC Community Ambassador Network)
Member of the Committee on Civil Procedural Law (*Ausschuss Zivilverfahrensrecht*) of the German Bar Association (DAV)
Member of the German Institution of Arbitration (DIS)
Member of the ASA Swiss Arbitration Association
Member of the London Court of International Arbitration (LCIA)
Member of the International Bar Association (IBA)
Fellow of the European Law Institute
Member of the European Association of Private International Law (EAPIL)

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

Accolades

Who's Who Legal Germany – Commercial Litigation (*"Ben Steinbrück maintains a well-established dispute resolution practice, with market sources commending his 'very profound knowledge of arbitration law' as well as his 'calm but assertive manner in negotiations'*)

Legal 500 2022 ("*Very professional and meticulous, quick comprehension, good understanding of economic issues, absolute specialist in the field of Dispute Resolution at the highest level*")

Publications

*Monograph*

"Die Unterstützung ausländischer Schiedsverfahren durch staatliche Gerichte", Mohr Siebeck 2009, 536 p. [The Support of Foreign Arbitration Proceedings by National Courts. A Comparative Study of German, Austrian, English, Swiss, French and U.S. Arbitration Law]

*Commentaries*

Commentary to § 11 German Supply Chain Due Diligence Act (Lieferkettensorgfaltspflichtengesetz – LkSG), Anhang § 11 LkSG (Zivilrechtliche Haftung) in: Gehling/Ott, Gesetz über die unternehmerischen Sorgfaltspflichten in der Lieferkette, Kommentar, Otto Schmidt Verlag, 2022

Commentary to §§ 15-20 Act on the Protection of Trade Secrets (Gesetz zum Schutz von Geschäftsgeheimnissen – GeschGehG) in: Brammsen/Apel (eds), Geschäftsgeheimnisgesetz, 2022 (with Dr Raphael Höll)

*Book chapters, articles, case notes*

"Keine Bindungswirkung der abweisenden Entscheidung in einem Aufhebungsverfahren im ausländischen Ursprungsstaat des Schiedsspruchs", Praxis des Internationalen Privat- und Verfahrensrechts (IPRax) 2024, 366-373 [discussing the Federal Court of Justice's ruling that unsuccessful challenge proceedings to a foreign arbitral award have no binding effect on German courts]

"Die EU-Lieferketten-Richtlinie (CSDDD)", Monatsschrift für Deutsches Recht (MDR) 2024, 1141-1150 [discussing the EU Corporate Sustainability Due Diligence Directive and comparing it to the German Supply Chain Due Diligence Act] (with Dr. Sebastian Traub)

"Der Regierungsentwurf zur Reform des Kapitalanleger-Musterverfahrensgesetzes (KapMuG)", Zeitschrift für Wirtschafts- und Bankrecht (WM) 2024, 1059-1067 [discussing the main reform proposals for the Capital Markets Model Case Act] (with Prof. Dr. Thomas Liebscher and Dr. Marcel Vollmerhausen)

"Die Feststellung der Unzulässigkeit von ICSID-Schiedsverfahren nach § 1032 Abs. 2 ZPO", Zeitschrift für Wirtschaftsrecht (ZIP) 2024, 727-735 [discussing the Federal Court of Justice's ruling applying s 1032 (2) Civil Procedural Code to ICSID arbitration] (with Justin Friedrich Krahé and Dr. Maximilian van der Beck)

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

"Lieferkettensorgfaltspflichten: Die besondere Prozessstandschaft nach § 11 LkSG", Monatsschrift für deutsches Recht (MDR) 2023, 1083-1090 [discussing standing rules under the special representative action according to s 11 German Supply Chain Due Diligence Act] (with Dr. Sebastian Traub)

"§ 1032 Abs. 2 (ZPO), das ICSID-Übereinkommen und Achmea – eine Kollision oder zwei Kollisionen?", Praxis des Internationalen Privat- und Verfahrensrechts (IPRax) 2023, 36-42 [discussing the Berlin Higher Regional Court's refusal to apply s 1032 (2) Civil Procedural Code to ICSID arbitration] (with Justin Friedrich Krahé)

"Declaratory relief against post-Achmea ICSID arbitration? German arbitral law's international reach", Europäische Zeitschrift für Wirtschaftsrecht (EuZW) 2022, 357-365 (with Justin Friedrich Krahé)

"Unzulässige Ersetzung des Vorlagebeschlusses durch Erweiterungsbeschluss nach § 15 KapMuG", Lindenmaier-Möhring (LMK) 2022, 800926 [discussing a decision by the Federal Court of Justice on the limits of the Higher Regional Courts' powers in relation to s 15 Capital Markets Model Case Act]

"Grenzüberschreitende Zivilverfahren nach dem Brexit", Europäische Zeitschrift für Wirtschaftsrecht (EuZW) 2021, 517-524 [discussing cross-border civil proceedings after Brexit in the areas of international jurisdiction, judicial cooperation and the recognition and enforcement of foreign judgements] (with Dr. Markus Lieberknecht)

"Internationales Zivilprozessrecht", in Heidel/Pauly/Wimmer-Amend (eds), AnwaltFormulare, 10th edn 2021, Deutscher AnwaltVerlag

"Betroffener Emittent bei Schadensersatzklagen wegen falscher Kapitalmarktinformation", Lindenmaier-Möhring (LMK) 2020, 434768 [discussing a decision by the Federal Court of Justice regarding who bears liability in claims under the Capital Markets Model Case Act]

"Recht der Leistungsstörungen im Lichte der COVID-19-Pandemie", Zeitschrift für Wirtschaftsrecht (ZIP) 2020, 852-865 [discussing breach of contract in light of the COVID-19 pandemic] (with Prof. Dr. Thomas Liebscher and Dr. Stefan Zeyher)

"Die örtliche Zuständigkeit nach § 32b Abs. 1 Nr. 1 ZPO bei mehreren in Anspruch genommenen Emittenten", Zeitschrift für Wirtschafts- und Bankrecht (WM) 2020, 359-369 [discussing the place of jurisdiction for claims under the Capital Markets Model Case Act] (with Prof. Dr. Thomas Liebscher)

"International Arbitration in India", in: Stephan Balthasar (ed.), International Commercial Arbitration, Part 3, Chapter L., 2nd edn C.H. Beck, Hart Publishing, Nomos 2020

SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mbH    www.sza.de    info@sza.de

Taunusanlage 1            Otto-Beck-Straße 11      Maximiliansplatz 18      Square de Meeûs 23
60329 Frankfurt a. M.     68165 Mannheim           80333 München            1000 Brüssel
T  +49 69 9769601 0       T  +49 621 4257 0        T  +49 89 4111417 0      T  +32 28 935 100
F  +49 69 9769601 102     F  +49 621 4257 280      F  +49 89 4111417 280    F  +32 28 935 102

SZA SCHILLING, ZUTT & ANSCHÜTZ

"Das Problem der Scheinäquivalenzen bei englischsprachigen Verträgen – eine Besprechung von Triebel/Vogenauer, Englisch als Vertragssprache", GmbH-Rundschau (GmbHR) 2019, R357 – R359

"Der Gesetzentwurf zur Einführung einer Musterfeststellungsklage", Zeitschrift für Wirtschaftsrecht (ZIP) 2018, 1321-1332 [discussing the draft law on the introduction of a model declaratory action] (with Dr. Michaela Balke and Prof. Dr. Thomas Liebscher)

"Discovery Light – Informations- und Beweismittelbeschaffung im Rahmen von Kartellschadensersatzklagen", Neue Zeitschrift für Kartellrecht (NZKart) 2017, 164-175 [discussing the procurement of information and evidence in the context of antitrust damages actions] (with Hans-Joachim Hellmann)

"Die Einberufung der Gesellschafterversammlung durch zu Unrecht im Handelsregister eingetragene Geschäftsführer", GmbH-Rundschau (GmbHR) 2017, 497-505 [discussing the Federal Court of Justice's jurisprudence on shareholders' meetings convened by director wrongly entered in the companies register] (with Prof. Dr. Thomas Liebscher)

"Die Präklusion verspäteter Erweiterungsanträge im Kapitalanleger-Musterverfahren nach § 15 KapMuG", Zeitschrift für Wirtschaftsrecht (ZIP) 2016, 893-898 [discussing the Capital Markets Model Case Act rules on preclusion of late requests to extend proceedings] (with Prof. Dr. Thomas Liebscher)

"Beendigung eines Beherrschungs- oder Gewinnabführungsvertrags: Zeitliche Begrenzung der Nachhaftung der herrschenden Gesellschaft", Der Betrieb (DB) 2014, 2950-2951 [discussing a Federal Court of Justice decision on the temporal scope of the controlling company's liability after the termination of a profit and loss transfer agreement] (with Prof. Dr. Thomas Liebscher)

"Nichtigkeit von Gesellschafterbeschlüssen infolge der Einberufung der Gesellschafterversammlung durch Erben bei Anordnung der Testamentsvollstreckung", Lindenmaier-Möhring (LMK) 2014, 361985 [discussing the nullity of shareholder resolutions as a result of the convening of the shareholders' meeting by heirs in the event of the execution of a will] (with Prof. Dr. Thomas Liebscher)

"Der Vertriebsort als Deliktsgerichtsstand für internationale Produkthaftungsklagen", in: Geimer/Schütze (eds.), Recht ohne Grenzen: Festschrift für Athanassios Kaissis zum 65. Geburtstag, sellier european law publishers 2012, 965-974 [discussing the conflict of laws rules relating to international product liability claims]

Article "Arbitration law (national)", in: Max Planck Encyclopedia of European Private Law, 2012, 67-71

SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mbH   www.sza.de   info@sza.de

Taunusanlage 1                  Otto-Beck-Straße 11        Maximiliansplatz 18      Square de Meeûs 23
60329 Frankfurt a. M.           68165 Mannheim             80333 München            1000 Brüssel
T  +49 69 9769601 0             T  +49 621 4257 0          T  +49 89 4111417 0      T  +32 28 935 100
F  +49 69 9769601 102            F  +49 621 4257 280        F  +49 89 4111417 280    F  +32 28 935 102

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

"Formerfordernisse einer mit einem inländischen Verbraucher geschlossenen Schiedsvereinbarung bei Wahl ausländischen Rechts", Lindenmaier-Möhring (LMK) 2011, 322740 [discussing the formal requirements of an arbitration agreement concluded with a domestic consumer when foreign law is chosen]

"India – Jurisdiction to Set Aside Foreign Arbitral Awards: Some Remarks on an Erroneous Rule of Law", Yearbook of Private International Law 2010, 481-495

"Orders Compelling Performance of Arbitration Agreements – Lessons to be learnt from U.S. Law?", Zeitschrift für Schiedsverfahren (SchiedsVZ) 2010, 177-182

"Internationale Zuständigkeit deutscher Gerichte für selbstständige Beweisverfahren in Schiedssachen", Praxis des Internationalen Privat- und Verfahrensrechts (IPRax) 2010, 424-428 [discussing a Higher Regional Court decision on interim relief for the purpose of securing evidence in independent evidence proceedings]

"Die Prüfung der Missbräuchlichkeit einer Schiedsklausel in Verbraucherverträgen trotz Rechtskraft des Schiedsspruchs" - EuGH, judgment of 6.10.2009, Rs. C-40/08 (Asturcom Telecomunicaciones), Lindenmaier-Möhring (LMK) 2009, 295201 [discussing review of arbitration clauses in consumer contracts despite a binding arbitral award]

"Englische Prozessführungsverbote zum Schutz von Schiedsvereinbarungen im europäischen Zivilprozess" – EuGH, judgment of 10.2.2009, Rs. C-185/07 (West Tankers), Zeitschrift für Europäisches Privatrecht (ZEuP) 2010, 168-185 [discussing an ECJ decision on English injunctions for the protection of arbitration agreements]

Stichwort "Schiedsrecht, staatliches", in: Basedow/Hopt/Zimmermann (eds.), Handwörterbuch des Europäischen Privatrechts, Mohr Siebeck 2009, 1353-1358

"Brussels I and Arbitration: Declaratory Relief as an Antidote to Torpedo Actions under a Reformed Brussels I Regulation", Zeitschrift für Schiedsverfahren (SchiedsVZ) 2009, 188-196 (with Dr. Martin Illmer)

"US-amerikanische Beweisrechtshilfe für ausländische private Schiedsverfahren", Praxis des Internationalen Privat- und Verfahrensrechts (IPRax) 2008, 448-453 [discussing US rules on State courts providing assistance to foreign-seated arbitral tribunals]

"Die Vollstreckbarkeit ausländischer Schiedssprüche nach ihrer Aufhebung im Ursprungsstaat", Internationales Handelsrecht (IHR) 2008, 152-157 [discussing the enforceability of foreign arbitral awards after their annulment in the state of origin]

SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mbH   www.sza.de   info@sza.de

Taunusanlage 1            Otto-Beck-Straße 11       Maximiliansplatz 18      Square de Meeûs 23
60329 Frankfurt a. M.     68165 Mannheim            80333 München            1000 Brüssel
T  +49 69 9769601 0       T  +49 621 4257 0         T  +49 89 4111417 0      T  +32 28 935 100
F  +49 69 9769601 102     F  +49 621 4257 280       F  +49 89 4111417 280    F  +32 28 935 102

**SZA** SCHILLING, ZUTT & ANSCHÜTZ

"U.S. Discovery and Foreign Private Arbitration – The foreign lawyer's perspective", Journal of International Arbitration (J. Int. Arb.) 2008, 329-343 (together with Dr. Martin Illmer)

"The Impact of EU Law on Anti-Suit Injunctions in Aid of English Arbitration Proceedings", Civil Justice Quarterly (CJQ) 2007, 358-375

"Die Anerkennung und Vollstreckung ausländischer Urteile nach kanadischem Recht", Praxis des Internationalen Privat- und Verfahrensrechts (IPRax) 2007, 245-249 [discussing the recognition and enforcement of foreign judgements under Canadian law]

"German and English Court Orders in Support of Foreign Arbitrations", European Business Organization Law Review (EBOR) 2005, 313-328

SZA Schilling, Zutt & Anschütz Rechtsanwaltsgesellschaft mbH    www.sza.de    info@sza.de

Taunusanlage 1                Otto-Beck-Straße 11         Maximiliansplatz 18         Square de Meeûs 23
60329 Frankfurt a. M.         68165 Mannheim              80333 München               1000 Brüssel
T  +49 69 9769601 0           T  +49 621 4257 0           T  +49 89 4111417 0         T  +32 28 935 100
F  +49 69 9769601 102         F  +49 621 4257 280         F  +49 89 4111417 280       F  +32 28 935 102